UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED-CLERK
U.S. DISTRICT COURT

2006 FEB -1  A 10: 55

| | |
|---|---|
| Sudesh Mehta and Surekha Mehta, H/W (Owners of Balhakam Satisavitri Inc.); Steven Pinkney<br>**Plaintiffs,**<br><br>-vs-<br><br>City of Jersey City; Jersey City Redevelopment Agency (JCRA); Carmine Scarpa; Joanne Monahan; Jerome Killeen; Annemarie Uebbing; Pamrapo Savings Bank; William Campbell; Donald Campbell; Frederic Brooks; Richard Silberberg; Gregory Cipriano; Hallmark Appraisal Company, Inc.; Michael Regan; Robert Margulies; Frank Catalina; Elnora Watson<br>**Defendants** | **Civil Action No.**<br>06 -0488(DMC)<br><br>**COMPLAINT**<br>1. Civil Rights Violations<br>2. Right to Trial by Jury<br>3. Eminent Domain<br>4. Abuse of Process (Summary Judgment)<br>5. Litigants' Rights<br>6. Right of Confrontation |

## PARTIES

Sudesh & Surekha Mehta (H/W), Plaintiffs Pro Se
G-11, Bayfront Apartments
True Blue, St. George's
Grenada, West Indies
Tele. (473) 439-5573

Steven Pinkney, Plaintiff Pro Se
233A Arlington Avenue
Jersey City, NJ 07305
Tele. (201) 433-5531

The City of Jersey City, Defendant
City Corporate Counsel
280 Grove Street
Jersey City, NJ 07302

Jersey City Redevelopment Agency (JCRA), Defendant
30 Montgomery Street
Jersey City, NJ 07302

Carmine Scarpa, Defendant
280 Grove Street
Jersey City, NJ 07302

Joanne Monahan, Defendant
280 Grove Street
Jersey City, NJ 07302

Jerome Killeen, Defendant
30 Montgomery Street
Jersey City, NJ 07302

Annemarie Uebbing, Defendant
30 Montgomery Street
Jersey City, NJ 07302

Pamrapo Savings Bank, Defendant
611 Avenue C
Bayonne, NJ 07002

William Campbell, Defendant
611 Avenue C
Bayonne, NJ 07002

Donald Campbell, Defendant
599 Avenue C
Bayonne, NJ 07002

Frederic Brooks, Defendant
143 Hoffman Boulevard
East Orange, NJ 07017

Richard Silberberg, Defendant
32 Burki Place
Freehold, NJ 07728

Gregory Cipriano, Defendant
55 Park Avenue
Rutherford, NJ 07070

The Hallmark Appraisal Company, Inc., Defendant
707 Summit Avenue
Union City, NJ 07087

Michael Regan, Defendant
City Construction Official
30 Montgomery Street
Jersey City, NJ 07302

Robert Margulies, Defendant
15 Exchange Place
Jersey City, NJ 07302

Frank Catalina, Defendant
15 Exchange Place
Jersey City, NJ 07302

Elnora Watson, Defendant
CEO, The Urban League of Hudson County
253-255 Martin Luther King Drive
Jersey City, NJ 07305

## JURISDICTION AND COMPLAINT

1. Sudesh Mehta and his wife Surekha Mehta (Owners of Balhakam Satisavitri, Inc.) along with Steven Pinkney as pro se plaintiffs file this complaint against parties listed as defendants for the following violations: Civil rights violations; Right to trial by jury; Eminent Domain; Abuse of process (Summary judgment/Entire Controversy/Res Judicata); Litigants' rights; and Right of confrontation.

2. Plaintiffs are not attorneys nor have they ever acquired any legal training in any law school (except the 12 years of run around), and therefore may not know how to write a complaint correctly and professionally effective but assure the court that plaintiffs truthfully will write what happened to them during these 12 years and what they believe about it. Plaintiffs promise to produce any document that court deems necessary in support of this complaint.

3. Jurisdiction is based on a final order from the New Jersey State Supreme Court denying without basis plaintiffs' reconsideration for petition for certification. Also it is based per plaintiffs' filings with the United States District Court at three (3) separate times. In the initial case in May/June 1995, the district court judge Honorable Politan had all the parties in the court but ruled that plaintiffs may return only after they have been to New Jersey Supreme Court. The second time was in January 2001 and the court ordered (01-120JWB) plaintiffs to complete the state court process. The following year, the third filing was summarily dismissed.

4. Plaintiffs (Mehtas) have pursued justice for over 12 years in cases that started in Bergen County Justice Center as BER-L-8383-93 (breach of contracts), transferred to Hudson County Superior Court as HUD-L-4112-95; Hudson County Chancery Court as C-17-01 (Eminent Domain claim), transferred to Hudson County Superior Court as HUD-L-2109-01. These cases were appealed as A-1151-97 (breach of contracts), A-5897-98 (demolition order of July 7, 1998 of subject property, 256-258 MLK Drive, Jersey City), A-3411-01 (lifting of stay of demolition order) and

A-3890-01 (Eminent Domain claim filed with Chancery Court). The New Jersey Supreme Court case numbers related to the above Appellate matters are 50,906 (A-1151-97 and A-5897-98) and 57,663 (A-3890-01).

5. A pattern of abuse has been demonstrated. The grant of application of summary judgments without trial by attorneys and the courts' disregard for justice for citizens entitled for fairness is an abuse which plaintiffs have experienced. The Mehtas, at great expense of attorneys who consistently and inexplicably dropped the ball, have been denied their day in court. **No discovery has ever been allowed by courts requested either by Mehtas or by the retained attorneys** who either never sought any or were not allowed to do so. Plaintiffs' properly filed motions unreasonably have been kept unheard.

6. The complaint for breach of contracts was filed by plaintiffs' first attorney in August 1993 in Bergen County (BER-L-8383-93) where plaintiffs resided. Plaintiffs' first attorney failed to prosecute the matter and never amended the complaint even after court allowed motion to amend. He helped release the city of Jersey City as a defendant and was finally released by the court without any due process. Plaintiffs moved before the Supreme Court Ethics Committee against the attorney who was reprimanded by the committee.

7. After about two years of struggle by pro se plaintiffs, the court in Bergen County, when motion for discovery was to be heard, transferred the matter to Hudson County Superior Court in May 1995. The Hudson County Court unreasonably changed the caption and removed various defendants including Joanne Monahan and Jerome Killeen without any due process and docketed the matter as HUD-L-4112-95. Plaintiffs' motions for discovery and the inclusion of removed defendants were never heard inspite of the fact that plaintiffs very properly filed and paid for them. Discovery to the defendants was forced by the court to the extent that plaintiffs' CPA was summoned to release information.

8. Plaintiffs' second attorney worked hard for a settlement but the city's lack of cooperation prevented it from happening. Plaintiffs' counsel was assigned as a municipal judge and was released unreasonably from the case in 1995.

9. Plaintiffs' third attorney at a great cost was retained who studied the case and filed a motion for discovery. This time court released him for plaintiffs' non cooperation in producing bills for the material purchased for the development of subject property (as alleged by plaintiffs' attorney's motion to release). When plaintiffs protested and produced the bills and prevailed, the court unreasonably granted attorney's motion anyway and suggested to file that discovery motion on either pro se basis or yet retain another attorney to do the discovery. Plaintiffs filed the motion but the court failed again and never heard it. Plaintiffs were left without attorney one more time. Plaintiffs believed that it was all organized to discourage them so that court may take advantage of the situation. And accordingly in 1996, William Campbell and Donald Campbell as defendants were released unreasonably by the court without hearing and without giving plaintiffs an opportunity to oppose.

10. Plaintiffs' fourth attorney spent many many hours with plaintiffs to have a good knowledge of the case and finally established that plaintiffs' losses were in the amount of five million dollars which the attorney answered in the interrogatories prepared by him. But sadly he too acted in the same manner even though he seemed to have worked very hard for justice. He failed to answer summary judgment motion and unreasonably went for a trial in September 1997 without any preparation.

11. Plaintiffs' subject property was in a blighted redevelopment area, eligible for application of City Development Block Grant (C.D.B.G.). Plaintiffs' applications submitted four (4) separate funding years at a great cost were either turned down or other times never responded to by the director of Division of Affordable Housing, Annemarie Uebbing. When Mayor Schundler requested a detailed statement for a resolution, Annemarie Uebbing misstated the facts and deprived unreasonably

plaintiffs an opportunity to develop the subject property. The Superior Court judge in 1998 acknowledged the issue but took no action inspite of Annemarie Uebbing present in the court.

12. There is a non-profit organization who the city and local redevelopment organization steered the subject property. Despite declaration of blight, the city offered $500 for the property based on an appraisal by its agent, the Hallmark Appraisal Company. Plaintiffs alleged that the appraisal report by the Hallmark was a bogus one and that the city acted on bad faith because it sold the property to the plaintiffs for $77,500 at an auction in 1989 and then plaintiffs spent over $265,000 part of which was certified in three (3) inspections conducted by the city inspectors. How can it be appraised for $500 only?

13. After the trial, city called in its construction official to declare the property a danger who issued a condemnation order on July 7, 1998 without due process, without inspection, without affording plaintiffs any opportunity to defend. The city construction official also in his condemnation order unreasonably used a wrong caption. It was an action by the city and therefore the city or its agent(s) should have been the plaintiff and Mehtas should have been the defendants but the court and the City Assistant Corporate Counsel, inspite of acknowledging the error, chose not to fix it and continued erroneously and maliciously with the trial of 1997 docket number (HUD-L-4112-95).

14. Plaintiffs challenged the demolition order and moved for consolidation for Entire Controversy issue with the appeal of the trial. The Appellate Court denied it, however sent all the papers back to lower court to file anew. The court issued discovery order to plaintiffs but based on the city attorney's very very short notice motion, judge denied plaintiffs' request to depose some key witnesses to prove that the condemnation order was baseless. In the meanwhile, the city vacant building department maliciously in October 1998 then staged the fire department causing damage to the building to prove condemnation order. The court ignored plaintiffs'

request to subpoena fire department and other city agencies to prove that the condemnation order was a bogus order. Instead the court finally in September 1999 stayed the matter and conducted no hearing. In short, plaintiffs' day in court was denied which they appealed as A-5897-98.

15. Appellate court this time in December 2000 for the purposes of disposition of the cases consolidated A-5897-98 with A-1151-97 and affirmed. Plaintiffs thought that the order was unclear for two (2) reasons. Firstly, the request to consolidate had been denied earlier then why Appellate consolidated it now. Secondly, the condemnation order was challenged and was sent back by Appellate judge for hearing which never happened, only stayed. So, how can Appellate court affirm an action which was never tried by a lower court? Plaintiffs requested for clarification but received only a denial.

16. Clearly, the Appellate court order of December 2000 was conflicting and confusing which factually got abused against plaintiffs. Superior Court judge and the City Assistant Corporate Counsel on record stated that order of demolition was also considered even though they both knew very well that the court had stayed the hearing in September 1999. Inspite of this, court lifted its own stay unreasonably on January 19, 2001 and accordingly city assistant corporate counsel moved for the demolition. Unreasonably, JCRA also moved for summary judgment based on Entire Controversy/Res Judicata principles which the plaintiffs opposed. However, the Supreme Court at the emergent motion by plaintiffs realized that the demolition order was one sided, had only been stayed. Therefore, the Supreme Court stayed the demolition on July 26, 2001 and ordered lower court for a hearing where both the City Construction Official and the plaintiffs with their attorney tell the court as to the condition of the subject property and as to why plaintiffs' attorney would not allow the demolition if monetary damages were awarded.

17. Plaintiffs' 5th and 6th attorneys whose law firm attempted a settlement with the city in 1995 were retained immediately. On July 27, they allowed demolition but failed

in achieving any monetary damages inspite of the court ordered opportunity to do so. Plaintiffs alleged that their attorneys conspired with defendants' attorneys. They seemed working for a settlement, but used plaintiffs' merits to their own benefits and failed to answer properly the JCRA's Entire Controversy/Res Judicata summary judgment motion. Instead, a discovery motion by plaintiffs' attorneys was filed which was months after they had hands on plaintiffs' files. At the hearing, plaintiffs' attorneys sat on their hands, granted concessions without plaintiffs' presence and knowledge, allowed summary judgment(s) with no challenge and finally quit the case after one week forcing plaintiffs to hire yet another attorney to file papers for reconsideration.

18. It should be noted that the judge of record Honorable Jose L. Fuentes (who is now an Appellate Judge) ruled based on the same conflicting and confusing Appellate order of December 2000 that Entire Controversy and Res Judicata applied. But plaintiffs' seventh attorney of record at the reconsideration motion on March 8, 2002 clearly established that the city agent, the non-profit Urban League of Hudson County (which is located just opposite to the subject property at 253-255 MLK Drive) since the court ordered demolition of July 27, 2001 had been using the property as a parking lot and the basis of summary judgment was wrong for the issue of damages by virtue of Superior Court's handwritten order of July 27, 2001 was still open (as confessed by both, the city and JCRA attorneys) and justly requested the court to deny defendants' motion. Inspite of the fact that the judge seemed convinced, ruled unreasonably in favor of the city and JCRA stating: "I have already denied their application. Now let Mehtas go to Appellate Division for the relief." (Please see the transcripts of March 8, 2002).

19. Plaintiffs appealed the matter and filed a brief with all the details including the submission of the city and JCRA. Surprisingly, the defendants in their response brief changed their position again and unreasonably supported the basis of summary judgment. However, simultaneously outside the court, they indicated to settle to make plaintiffs whole. Plaintiffs appreciated their gesture and retained their initial

closing attorney who handled negotiations with JCRA and Pamrapo during 1990-1991. The deal was that JCRA would grant $300,000 to the non-profit, the Urban League of Hudson County to purchase demolished lot and the city would offer plaintiffs a list of city owned properties to choose from and the funds to develop twenty (20) units. As usual, plaintiffs got tricked again. Instead, maliciously the demolition charges of the **whole block** of over $344,000 were placed on plaintiffs' property as city liens. As a result, contracted purchase by the non profit for $250,000 failed. Interestingly, the non-profit, while in the unauthorized occupation of the vacant lot now only offered $50,000 leaving behind a question as to who, why, and how to find the people responsible for this ugly game and how they can be brought to justice.

20. Plaintiffs alleged that the city never acted on good faith and unreasonably failed to settle numerously. Plaintiffs have also alleged that for a particular ulterior motive city had acted maliciously numerously. Plaintiffs allege that that motive and the fact of the matter as indicated by a former JCRA director is that the subject property prior to its sale to the plaintiffs was to be given to this non-profit, the Urban League of Hudson County. And plaintiffs see things happening exactly the way the city planned it. Now, it is up to the justice centers to see what is to be seen.

21. Why the subject property was sold at a city auction to the plaintiffs and why the plaintiffs have suffered unreasonably is the question which city had never attempted to answer. Instead, the city maliciously, unreasonably, and mercilessly with the help of its agents lied at the trial and before the courts which brought about a financial ruins of the plaintiffs. Plaintiffs alleged that the city department of planning had plans for the non-profit to utilize the subject property and could be proven so if the discovery had been granted.

22. Plaintiffs did not receive equal treatment, had discovery, subpoenas and motions quashed throughout the cases. The use of summary judgments was baseless, arbitrary, and capricious. There was no equal treatment, due process, right to

housing as required under the 14th amendment. Under litigants' rights, plaintiffs were not allowed to confront the defendants. The Appellate Division followed the pattern of Superior Court even though the Appellate Judges ruled it did not, but did not overturn the case. Plaintiffs feel at all times that they were being harmed and issues of estoppels, both silent and otherwise, should have prevented defendants from raising the statutes of fraud, issues of racial steering. The case was rubber stamped by the Appellate and the Supreme Court which gave no consideration of issues, just denials.

23. The major civil rights issue raised here is the right to a trial by jury of their peers. In the trial docketed HUD-L-4112-95, Mehtas' fourth attorney went totally unprepared for trial in September 1997. When plaintiffs asked for the reason as to why he misstated plaintiffs that they were coming to court for hearings for motion to postpone the trial, attorney of record stated: "I cannot answer." And when the court was requested by the plaintiffs to postpone that trial based on the fact that there were no witnesses, no depositions, no interrogatories, no discovery, no nothing by plaintiffs' attorney, the court after hours of consultations and research compelled the helpless plaintiffs to proceed for trial or else their complaint shall be dismissed and will never be reinstated. Subsequently, the court issued its summary judgment on one of two major defendants and proceeded to trial after quashing the evidence against that defendant. Although a jury trial was heard, it heard none of the evidence which formed the case. **This is part of the abuse of process case.** This seemed to the plaintiffs as if it was all organized but were helpless and kept the faith and belief alive that justice and truth one day shall prevail and continued the struggle ever since.

24. **Nunc pro tunc**: The Mehtas have suffered a near tragedy only averted by surgery of their son's right eye. He had lost complete vision in his eye due to a bacterial infection of the cornea. This took Mehtas' attention for several months beginning September 2005 and only on December 28, 2005, the New York Eye and Ear Infirmary allowed Mehtas to leave for Grenada, West Indies where plaintiffs' sons

attend a medical school. Additionally, plaintiffs on January 6, 2006 telephoned the Supreme Court for the order for reconsideration of petition for certification and were advised that order was mailed out in October 2005 at their Grenada address. The case manager also stated that the order came back to the sender due to lack of postal stamps since the court was only allowed to place a stamp of $0.37 and that the same order now would be sent out at plaintiffs' New Jersey address. Therefore plaintiffs do not have the court order in their possession as to date. Respectfully, plaintiffs request to accept their papers on nunc pro tunc basis if filing of this complaint is deemed out of time.

## CAUSE OF ACTION

1. Plaintiffs argue that their right to a trial by a jury of their peers was denied by arbitrary and capricious use of summary judgments and denial, quashing of discovery in the form of subpoenas and motions and in particular by the court action at the trial of September 1997 to deny plaintiffs' request to postpone the trial and to compel them to proceed knowing them very well that plaintiffs' attorney came unprepared.

2. The blighting of Martin Luther King Drive and declaration of Eminent Domain by law requires plaintiffs be compensated. The abusive use of summary judgment allowed plaintiffs' pleadings to be swept under the carpet in violation of their right to housing. This represents a federal housing legal issue.

3. Plaintiffs alleged the use of racial "steering" in this case met all criteria to give them standing in the lower courts, Appellate Division, Supreme Court of New Jersey, and now in the United States District Court.

4. The funds administered in this case were HUD funds giving rise to a federal standing.

5. Plaintiffs were denied 14th amendment right to due process, equal treatment, housing and article III constitutional right to confront defendants and litigants' rights.

## DEMAND

Plaintiffs have lost their investment properties including a well established restaurant business on foreclosures due to financial hardship created by the breach of contracts. Plaintiffs' credit rating dropped from top to zero and are no longer real estate developers. Their place of residence due to sheriff's sale was timely saved by filing Chapter 13 but lost it finally when the assurances by the city that there would be a settlement forthcoming **failed**. Presently, after having lost the MLK Drive project, plaintiffs with no money, no credit, no business are dependants spending most of their time with their sons who pursue a career in medicine outside the country in Grenada, West Indies. Therefore, for the sake of justice, plaintiffs very respectfully request the court to:

1. Mediate and mitigate the losses what plaintiffs are due in terms of Eminent Domain, breach of contract, and punitive damages. **OR**
2. Declare all related cases be adjoined and returned to the lower court as a mistrial and order legal fees and court costs be incurred by the defendants or entities causing the damage so that plaintiffs can afford an attorney for the matter. **OR**
3. Establish a mediator who will act in good faith to establish damages of the plaintiffs.

Submitted respectfully,

(Sudesh Mehta)

(Surekha Mehta)

(Steven Pinkney)

Dated: January 11, 2005

cc: Clerk of the Hudson County Superior Court
Clerk of the Appellate Division
Clerk of the Supreme Court of New Jersey